IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CARMEN RENEE PEREA,**

    **Plaintiff,**

    vs.                                                   Civ. No. 17-573 KK

**NANCY A. BERRYHILL,**[1]
**Acting Commissioner of Social Security,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 14) filed October 10, 2017, in support of Plaintiff Carmen Renee Perea's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title II disability insurance benefits and Title XVI supplemental security income benefits. On December 22, 2017, Plaintiff filed her Motion to Remand or Reverse ("Motion"). (Doc. 21.) The Commissioner filed a Response in opposition on February 20, 2017 (Doc. 23), and Plaintiff filed a Reply on March 6, 2018. (Doc. 24.) The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill is substituted for Carolyn Colvin as the Acting Commissioner of the Social Security Administration. Fed. R. Civ. P. 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 7, 10, 11.)

## I. Background and Procedural Record

Claimant Carmen Renee Perea ("Ms. Perea") alleges that she became disabled on February 18, 2013, at the age of forty-six because of bipolar disorder, post-traumatic stress disorder, migraines, left hip injury, hypothyroidism, and seasonal allergies. (Tr. 227, 231.[3]) Ms. Perea completed the twelfth grade in 1985, and worked as a courthouse clerk and public works customer service representative. (Tr. 232.)

On May 10, 2013, Ms. Perea protectively filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. (Tr. 11, 227.) Ms. Perea's application was initially denied on July 23, 2013. (Tr. 69, 70-82, 101-04.) It was denied again at reconsideration on October 17, 2013. (Tr. 83-97, 98, 106-111.) On December 5, 2013, Ms. Perea requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 112.) On June 26, 2014, Ms. Perea filed for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. (Tr. 199-208.) The ALJ conducted a hearing on both the Title II and Title XVI applications on November 20, 2015. (Tr. 37-68.) Ms. Perea appeared in person at the hearing with non-attorney representative John Bishop.[4] (*Id*.) The ALJ took testimony from Ms. Perea (Tr. 41-63), and an impartial vocational expert ("VE"), Cassandra Humphries. (Tr. 63-67.) On January 29, 2016, ALJ Eric Weiss issued an unfavorable decision. (Tr. 8-21.) On March 17, 2017, the Appeals Council issued its decision denying Ms. Perea's request for review and upholding the ALJ's final decision. (Tr. 1-7.) On May 22, 2017, Ms. Perea timely filed a Complaint seeking judicial review of the Commissioner's final decision. (Doc. 1.)

---

[3] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 14) that was lodged with the Court on October 10, 2017.

[4] Ms. Perea is represented in these proceedings by Attorney Michael Armstrong. (Doc. 1.)

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[5] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's

---

[5] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

3

residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B. **Standard of Review**

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias,* 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d

1270, 1272 (10th Cir. 2008). A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### III. <u>Analysis</u>

The ALJ made his decision that Ms. Perea was not disabled at step five of the sequential evaluation. Specifically, the ALJ found that Ms. Perea met the insured status requirements through December 31, 2018, and had not engaged in substantial gainful activity since her alleged onset date of February 18, 2013. (Tr. 13.) The ALJ determined that Ms. Perea had severe impairments of post-traumatic stress disorder, major depressive disorder, bipolar disorder, osteoarthritis of the pelvis, left hip degenerative tearing of the acetabular labrum, neuropathy of the bilateral lower extremities, lumbar degenerative joint disease at L4-5, degenerative facet changes at L4-5, right arm radial neuropathy, and type II diabetes mellitus. (*Id.*) He also found she had non-severe impairments of gastroesophageal reflux disease, hypothyroidism, obesity, migraine headaches, and biliary dyskinesia, status-post laparoscopic cholecystectomy. (Tr. 14.) The ALJ determined that Ms. Perea did not have an impairment or combinations of impairments

that met or medically equal the severity of a listing. (Tr. 14-15.) Proceeding to step four, the ALJ found that Ms. Perea had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except that

> she is able to lift and carry 10 pounds occasionally and lift and carry less than 10 pounds frequently, but no push and pull with the lower left extremity. She is able to walk and stand for 2 hours per 8-hour workday and sit for 6 hours per 8-hour workday with normal breaks. She is able to occasionally climb ramps and stairs, but never ladders, ropes and scaffolds. She is able to occasionally balance, stoop, crouch, and kneel, but never crawl. She is able to frequently reach with her right dominant upper extremity. She must avoid more than occasional exposure to unprotected heights and moving machinery. She is able to understand, remember and carry out simple instructions and make commensurate work related decisions, and adjust to routine changes in work setting. She is able to interact occasionally with supervisors, co-workers and the public. She is able to maintain concentration, persistence and pace for 2 hours at a time during the workday with normal breaks.

(Tr. 16.) Based on the RFC and the testimony of the VE, the ALJ concluded that Ms. Perea was incapable of performing her past relevant work, but that there were jobs that existed in significant numbers in the national economy that the claimant could perform. (Tr. 19-21.) The ALJ, therefore, determined that Ms. Perea was not disabled. (Tr. 21.)

In her Motion, Ms. Perea argues (1) that the ALJ failed to perform the requisite analysis under *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992) to determine that jobs existed in significant numbers in the national economy that Ms. Perea could perform; and (2) that the ALJ failed to resolve a conflict between the VE testimony and the DOT regarding Ms. Perea's limitation to simple instructions and simple work-related decisions and the reasoning three level jobs the VE identified. (Doc. 21 at 14-18.) The Court finds grounds for remand as discussed below.

A. **The ALJ Failed to Meet His Burden at Step Five That Jobs Existed in Significant Numbers in the National Economy That Ms. Perea Could Perform**

At the Administrative Hearing, the ALJ questioned the VE in relevant part as follows:

Q. Assume a hypothetical individual who is able to lift 10 pounds occasionally and lift and carry less than 10 pounds frequently, but no push and pull with the lower left extremity. Able to walk and stand for two hours per eight-hour workday, and sit for six hours per eight-hour workday with normal breaks. Able to occasionally climb ramps and stairs, but never ladders, ropes and scaffolds. Able to occasionally balance, stoop, crouch and kneel, but never crawl. Able to frequently reach with right dominant upper extremity. Must avoid more than occasional exposure to unprotected heights and moving machinery. Able to understand, remember and carry out simple instructions, and make commensurate work-related decisions, and adjust to routine changes in work setting. Able to interact occasionally with supervisor, co-workers and the public. Able to maintain concentration, persistence and pace for two hours at a time during the workday with normal breaks. Can such a hypothetical individual perform Claimant's past work?

A. No.

Q. And is that because it exceeds the skill level?

A. Yes.

Q. Assume a hypothetical individual of Claimant's age, education and work experience. Can such a hypothetical individual perform other work?

A. Yes.

Q. Could I have three representative examples, please?

A. Under that hypothetical we would look at a table worker. It's a sedentary, unskilled position, SVP: 2. The DOT code is 739.687-182. The estimated national numbers for that DOT code is 2400. There would also be a document specialist, which is a sedentary, unskilled position, SVP: 2. The DOT code is 379.367-010. The estimated national numbers for that DOT code are 500,000. There would also be a bench hand. It's a sedentary, unskilled position, SVP: 2. The DOT code is 715.684-026. The estimated national numbers for that DOT code would be 2200.

Q. Is your testimony consistent with the DOT?

A. It is.

(Tr. 64-65.) In his determination, the ALJ's RFC assessment mirrors the hypothetical presented to the VE as stated above, and the ALJ relied on the three representative jobs the VE identified to determine at step five that there were significant jobs in the national economy that Ms. Perea could perform and she was, therefore, not disabled. (Tr. 15-16, 20.)

Ms. Perea argues that the ALJ failed to perform the requisite analysis under *Trimiar* to determine that jobs existed in significant numbers in the national economy that Ms. Perea could perform. (Doc. 21 at 14-15.) She explains that one of the jobs the VE identified was "document specialist," which does not exist in the DOT. (Doc. 21 at 14.) She also explains that the DOT number the VE provided for that job title actually corresponds to "surveillance-system monitor," a job that would be precluded for reasons set forth in the second half of her argument.[6] (*Id.*) Ms. Perea asserts that because the ALJ erroneously relied on the VE testimony regarding the "document specialist" or DOT code 379.367-010 (surveillance-system monitor) job, that job must be eliminated from the ALJ's findings, and that her denial of benefits is, therefore, only supportable if the two remaining jobs of table worker and bench hand exist in significant numbers. (*Id.* at 14-15.) Ms. Perea contends that given the low number of jobs available, the ALJ should have conducted an analysis pursuant to *Trimiar* to determine whether they existed in significant numbers. (*Id.*)

The Commissioner contends that any error at step five was harmless. (Doc. 23 at 4-6.) The Commissioner concedes that the VE cited an incorrect DOT number for the job title of "document specialist" and that the DOT number provided corresponds with the occupation of "surveillance-system monitor." (*Id.*) The Commissioner suggests, however, that the VE, and ALJ, "probably meant to identify the occupation 'document preparer, DOT No. 249.587-018,' an

---

[6] *See* Section III.B, *infra*.

unskilled, sedentary occupation that matches up with Plaintiff's undisputed RFC." (*Id.*) The Commissioner further contends that *Trimiar* is inapposite to the facts here because in *Trimiar* the VE testified only to the number of available jobs in the regional economy. (*Id.*)

When the disability analysis reaches step five of the sequential process, the burden shifts to the Commissioner to show that "there are sufficient jobs in the national economy for a hypothetical person with [the claimant's] impairments," *Jensen v. Barnhart*, 436 F.3d 1163, 1168 (10th Cir. 2005), "given her age, education, and work experience." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *see also* 20 C.F.R. §§ 416.960, 416.963-65 (explaining that a claimant's vocational factors of age, education, and work experience are considered, along with the claimant's RFC, to determine at step five whether there are a significant number of jobs that a claimant can perform). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

To determine whether jobs exist in significant numbers, regulations require the Commissioner to take administrative notice of reliable job information from various governmental and other publications. 20 C.F.R. § 416.966(d). Among the publications the regulations identify is the *Dictionary of Occupational Titles*, published by the Department of Labor.[7] 20 C.F.R. § 416.966(d)(1). The Commissioner may also use the services of a vocational expert or other specialist to determine whether a claimant's work skills can be used in specific occupations. 20 C.F.R. § 416.966(e); *see also Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished) (explaining that the whole point of vocational testimony is to go beyond facts already established through publications eligible for judicial or administrative notice and

---

[7] Other publications include the *County Business Patterns*, published by the Bureau of Census; *Census Reports*, also published by the Bureau of Census; *Occupational Analyses*, prepared for the Social Security Administration by various State employment agencies; and *Occupational Outlook Handbook*, published by the Bureau of Labor Statistics. 20 C.F.R. 416.966(d)(2)-(5).

9

provide an alternative avenue of proof) (citing *Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993)). An ALJ may properly rely on a VE's expert testimony, *Haddock v. Apfel*, 196 F.3d 1084, 1089 (10th Cir. 1999), but only when a claimant's impairments and limitations are adequately and precisely reflected in the hypothetical posed to the expert. *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). "An ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert testimony as substantial evidence to support a determination of nondisability." *Haddock*, 196 F.3d at 1091; *see also* SSR 00-4p, 2000 WL 1898704, at *4 (clarifying the ALJ's affirmative responsibility to ask about conflicts).

The Tenth Circuit has emphasized that "the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation" and, as such, "the evaluation 'should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.'" *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)). In *Trimiar*, the issue was whether 650 to 900 jobs existing in the region constituted a significant number. 966 F.2d at 1329-32. The court stated that "[t]his Circuit has never drawn a bright line establishing the number of jobs necessary to constitute a "significant number," and noted several factors courts may consider in evaluating the "significant number" issue, including: (1) the level of claimant's disability; (2) the reliability of the vocational expert's testimony; (3) the distance claimant is capable of traveling to engage in the assigned work; (4) the isolated nature of the jobs; and, (5) the types and availability of such work. *Id.* at 1330 (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)). The court ultimately determined that the ALJ had considered those factors, and that substantial evidence supported his decision. *Id.* at 1332.

A number of subsequent Tenth Circuit cases have addressed the application of *Trimiar* and the issue of what constitutes a significant number of jobs. In *Allen*, the court remanded when it determined that the ALJ had erroneously relied on two jobs that were in direct conflict with his RFC findings to find that significant jobs existed, and concluded that the ALJ "never had occasion to decide if the one hundred [statewide] surveillance jobs alone constituted a significant number under the statute." 357 F.3d at 1144. The *Allen* court rejected the Commissioner's harmless error argument and held that it would be an improper exercise in judicial factfinding to excuse the ALJ's failure to assess the numerical significance of the surveillance jobs in connection with the *Trimiar* factors given the low number of jobs at issue. *Id.* at 1145. In *Rhodes v. Barnhart*, 117 F. App'x 622 (10th Cir. 2004) (unpublished), the court remanded where the ALJ had stated on the record at the administrative hearing that 150 statewide supervisor jobs was not a significant number of jobs, but subsequently concluded in his decision, without any analysis or discussion of the *Trimiar* factors, that 150 jobs in the State of Oklahoma and 14,000 jobs nationally were a significant number of jobs. *Id.* at 632. The court explained that because the ALJ failed to evaluate the *Trimiar* factors and make specific factual findings regarding the numerical significance requirement, it could not properly review the issue. *Id.* In *Chavez v. Barnhart*, 126 F. App'x 434 (10th Cir. 2005) (unpublished), the court remanded because two of the jobs the VE described conflicted with the Dictionary of Occupational Titles, and the ALJ did "not give explicit consideration to the [*Trimiar*] factors this court has recognized should guide the ALJ's commonsense judgment," and did not have an opportunity to evaluate whether the 199 parking lot attendant jobs in the region, standing alone, existed in significant numbers. *Id.* at 436. In *Norris v. Barnhart*, 197 F. App'x 771 (10th Cir. 2006) (unpublished), the court remanded on other grounds, but noted that the ALJ's consideration of the *Trimiar* factors

11

on remand could be particularly important given the fairly small number of jobs identified,[8] and in view of the claimant's inability to sit for more than 45 minutes, which could preclude her from driving long distances to work. *Id.* at 777.

In contrast, in *Stokes v. Astrue*, 274 F. App'x 675 (10th Cir. 2008) (unpublished), the court applied harmless error where two of the four jobs the ALJ relied on were determined to be inconsistent with the ALJ's RFC, and concluded that no reasonable factfinder could determine that suitable jobs did not exist in significant numbers where there were still 11,000 regionally available jobs and 152,000 nationally available jobs from the two remaining jobs. *Id.* at 684. In *Rogers v. Astrue*, 312 F. App'x 138 (10th Cir. 2009) (unpublished), the court implied that 11,000 nationally available jobs was a significant number.[9] *Id.* at 142. In *Raymond v. Astrue*, 356 F. App'x 173 (10th Cir. 2009) (unpublished), the only question before the court was whether or not the job of rental clerk existed in significant enough numbers. *Id.* at 177. The claimant argued that a significant number of jobs must exist in the *regional* economy before an ALJ can avoid a disability finding and that 385 rental clerk jobs in the region was insufficient. *Id.* at 177. The court rejected the claimant's argument, holding that the controlling statutes, federal regulations, and case law all indicate that the proper focus is generally on jobs in the national, not regional,

---

[8] The VE identified surveillance system monitor (700 to 1000 jobs regionally and 65,000 to 85,000 nationally) and food and beverage order taker (600 jobs regionally and 125,000 nationally). *Norris v. Barnhart*, 197 F. App'x 771, 777 (10th Cir. 2006).

[9] The question before the Court was whether the ALJ failed to resolve a conflict between the VE's testimony and the DOT regarding the exertional requirement for the job of hand packager. *Rogers v. Astrue*, 312 F. App'x 138, 141-42 (10th Cir. 2009). The hand packager job required medium exertional capacity; however, the ALJ's RFC assessment had limited claimant to lifting no more than 10 pounds at a time or lifting and/or carrying more than 3-5 pounds more than occasionally. *Id.* at 141. The Court held that because the VE testified, on the basis of his professional experience, that 11,000 *sedentary* hand packager jobs existed in the national economy, the apparent conflict between the DOT and the VE's testimony regarding the job's exertional requirements was reasonably explained, and the ALJ could rely on the testimony as substantial evidence to support her determination of nondisability. *Id.* at 142.

12

economy.[10] *Id.* The court also distinguished the facts in *Trimiar* and noted that *Trimiar* does *not* hold that only regional jobs are relevant, or that a court must engage in a factorial analysis when the number of jobs available is much larger as it was here (1.34 million national jobs). *Id.* at 178, n. 2. Finally, in *Botello v. Astrue*, 376 F. App'x 847 (10th Cir. 2010) (unpublished), the claimant argued that the ALJ had failed to consider his traveling distance pursuant to *Trimiar* as directed by the court on remand. *Id.* at 849-51. The *Botello* court held that even though the ALJ failed to make any findings in his remand decision regarding the distances that claimant would have to travel pursuant to *Trimiar* as ordered, that the court could uphold the ALJ's significant numbers ruling based solely on the number of jobs that the VE identified as being available in the national economy; *i.e.,* 67,250. *Id.* at 851. Relying on its unpublished order and judgment in *Raymond*, the *Botello* court reiterated that *Trimiar* did not require ALJs to engage in a multi-factorial analysis to assess whether there are significant jobs in the regional economy when the number of national available jobs is significant and unchallenged. *Id.*

Here, the ALJ relied on the VE testimony at step five, found it to be consistent with the DOT, and determined that the number of jobs cited was significant. (Tr. 21.) The ALJ did not explicitly apply the *Trimiar* factors in his analysis; however, the record demonstrates that the ALJ considered Ms. Perea's impairments, and gave due consideration to the VE's education and

---

[10] The Court stated that in 42 U.S.C. § 423(d)(2)(A), for example, Congress prescribed that "[a]n individual shall be determined to be under a disability only if . . . [he cannot] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area . . . '[w]ork which exists in the national economy' means work which exists in significant numbers *either* in the region where such individual lives *or* in several regions of the country." *Raymond*, 356 F. App'x at 177 (emphasis added); *see also* 20 C.F.R. § 416.966(c) ("We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy."); *Jensen v. Barnhart*, 436 F.3d 1163, 1168 (10th Cir. 2005) ("The Commissioner met her five-step burden of proving that there are sufficient jobs in the national economy for a hypothetical person with Jensen's impairments."); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (noting that the claimant must show his impairments prevent him from performing his past work, and then the burden shifts to the Commissioner to show that the claimant can perform work in the national economy)); *Hamlin v. Barnhart*, 365 F.3d 1208, 1224 (10th Cir. 2004) (noting that jobs need only exist within "the regional *or* national economy") (emphasis added)).

experience (Tr. 63-65). *Trimiar*, 966 F.2d at 1330. Further, there is no evidence that Ms. Perea has any physical limitations that would preclude her from traveling certain distances to work.[11] *Id.* That said, the ALJ's reliance on the VE's testimony regarding the "document specialist" *or* DOT code 379.367-010 (surveillance-system monitor) job to determine the numerical significance of the available jobs was clearly in error, and the Court will not adopt the Commissioner's post-hoc speculation regarding what the VE and ALJ "probably meant" given the vast disparity between the job titles and DOT codes at issue.[12] *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (finding the court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision). Moreover, for the reasons discussed below, the Court has determined that whether the VE considered the surveillance-system monitor job or the document preparer job, the ALJ failed to resolve the conflict between the VE's testimony and the DOT regarding Ms. Perea's limitation to simple instructions and simple work-related decisions and the reasoning three level required for both of those jobs.[13] For this reason, the Court will consider only whether there is substantial evidence that the table worker and bench hand jobs exist in significant numbers in the national economy.

---

[11] The ALJ's physical RFC, which Ms. Perea has not disputed, does not suggest any physical limits on Ms. Perea's ability to travel long distances. *See, e.g., Norris v. Barnhart*, 197 F. App'x 771, 777 (10th Cir. 2006) (unpublished) (instructing on remand that consideration of the *Trimiar* factors could be particularly important given the fairly small number of jobs identified and where the claimant could only sit for forty-five minutes at a time, which could preclude traveling long distances to work).

[12] The VE identified the job of "document specialist" which does not exist in the DOT. (Tr. 65.) The VE cited the DOT code 379.367-010, which corresponds to the job of surveillance-system monitor. (Tr. 65, Doc. 21 at 14-15; Doc. 23 at 5.) The Commissioner speculates that the VE meant to identify the job of "document preparer," which has a DOT code of 249.587-018. (Doc. 23 at 5.)

[13] *See* Section III.B, *infra*.

The Tenth Circuit has

> made it clear that judicial line-drawing in this context is inappropriate, that the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and, most importantly, that the evaluation "should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation."

*Allen*, 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting *Trimiar*, 966 F.2d 1236, 1330 (10th Cir. 1991)). However, this general rule is not without exception, as the *Allen* court recognized that

> it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, *i.e.,* where, based on material the ALJ did at least consider (just not properly) we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.

*Id.* at 1145. Thus, the district court may supply a missing dispositive finding, but only in "exceptional circumstance[s]." *Id.*

Here, the ALJ did not explicitly evaluate or engage in a fact-specific consideration of the numerical significance of 2400 table worker and 2200 bench hand jobs in the national economy. This number of national jobs in the aggregate, 4600, is well below the 11,000 nationally available jobs the Tenth Circuit has previously implied constitutes a significant number. *Rogers,* 312 F. App'x at 142. The Court is, therefore, not persuaded that it is appropriate to find harmless error in this circumstance. In light of the Tenth Circuit's preference that the ALJ evaluate numerical significance in the first instance and that the district court supply a dispositive finding only in an "exceptional circumstance," this Court declines to apply harmless error to conclude that there are a "significant number" of jobs available to Ms. Perea in the national economy. The Court also finds that it would be an improper exercise in judicial factfinding to excuse the ALJ's failure to assess the numerical significance of the table worker and bench hand jobs in

connection with all of the *Trimiar* factors given the low number of jobs at issue here. *Allen*, 357 F. 3d at 1145; *Raymond*, 356 F. App'x at 178, n.2; *Botello*, 376 F. App'x at 851.

For the foregoing reasons, the Court finds that the ALJ improperly relied on the VE's testimony to determine that significant jobs existed in the national economy that Ms. Perea could perform and that the ALJ's step five findings, therefore, are not supported by substantial evidence. *Thompson,* 987 F.2d at 1487. The Court further finds that consideration of all the *Trimiar* factors on remand could be important given the low number of national jobs at issue here. *Norris*, 197 F. App'x at 777; *Botello*, 376 F. App'x at 851.

### B. The ALJ Failed to Resolve the Conflict Between the VE's Testimony and the Job Descriptions in the DOT

Ms. Perea argues that the ALJ failed to resolve the conflict between the VE's testimony and the DOT regarding Ms. Perea's limitation to simple instructions and simple work-related decisions and the reasoning three level jobs the VE identified. (Doc. 21 at 15-18.) Relying on *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005), Ms. Perea explains that the surveillance-system monitor job, the job that corresponds to the VE's cited DOT code, requires a reasoning level of three, which is incompatible with the ALJ's mental RFC limiting her to simple, work-related decisions. (*Id.*) Ms. Perea further explains that even if the Court were to assume that the VE and ALJ meant to identify the job as "document preparer, DOT code 249.587-018," as opposed to "document specialist," which does not exist in the DOT, that the job of document preparer also requires a reasoning level of three, which is similarly incompatible with the ALJ's mental RFC. (Doc. 24 at 2.) For these reasons, Ms. Perea asserts there was an apparent conflict between the VE's testimony and the DOT that the ALJ had a duty to resolve. (*Id.*)

The Commissioner does not agree with Ms. Perea's assertion that there was a conflict between the ALJ's finding that she could do simple work and the GED level three reasoning,

explaining that the GED requirements relate only to those aspects of a claimant's education that are required of a worker for satisfactory job performance. (Doc. 23 at 6-7.) Although the Commissioner acknowledges the Court's decision in *Hackett,* wherein the Tenth Circuit found that a limitation to "simple and routine work tasks" was inconsistent with the demands of level three reasoning, 395 F.3d at 1176, she contends that the *Hackett* court did not discuss the GED in relationship to a claimant's education.[14] (*Id.*) The Commissioner also contends that Ms. Perea's past relevant work is evidence that she is capable of performing level three reasoning. (*Id.* at 7.)

The ALJ failed to resolve the conflict between the VE's testimony and the DOT regarding Ms. Perea's limitation to simple instructions and simple work-related decisions and the reasoning three level jobs the VE identified. The ALJ's mental RFC clearly limited Ms. Perea to understanding, remembering and carrying out *simple* instructions and making commensurate *simple* work-related decisions. (Tr. 16.) The Tenth Circuit has made clear that a limitation to simple, routine work tasks, seems inconsistent with the demand of level-three reasoning. *Hackett*, 395 F.3d at 1176. Even acknowledging that the GED ratings generally correspond to a person's level of formal and informal education that makes them suitable for a job, *Anderson v.*

---

[14] In support, the Commissioner cites to *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished) (explaining that the "GED does not describe specific mental or skill requirement of a particular job, but rather describes the general educational background that makes an individual suitable for the job, broken into the divisions of Reasoning Development, Mathematical Development and Language Development"); and *Mounts v. Astrue*, 479 F. App'x 860, 868 (10th Cir. 2012) (unpublished) (explaining that "[j]ob descriptions in the Dictionary of Occupational Titles contain several elements required to perform a specific job, including a claimant's GED, which is the level of formal and informal education required to perform a specific job").

These cases, however, are not dispositive on the question of whether a claimant limited to simple work is capable of level three reasoning, nor do they challenge the Tenth Circuit's published holding in *Hackett*. In *Anderson*, the claimant argues that the VE's testimony was inconsistent with the DOT because the DOT provides that some unskilled jobs require a reasoning level of three, which the claimant allegedly lacked. 514 F. App'x at 764. The court cited the components of GED, but did not resolve the issue of whether there was a conflict between the VE testimony and the DOT. *Id.* Instead, the court applied harmless error explaining that even assuming there was a conflict between the VE's testimony and the DOT, the ALJ had identified two jobs in significant numbers that required reasoning level one which the claimant could clearly perform. *Id.* In *Mounts*, the claimant challenged whether she could perform work at the GED level of three based on the ALJ's RFC assessment. 479 F. App'x 860, 868. The court determined that no genuine dispute existed that the claimant possessed the GED to perform the jobs the VE identified. *Id.*

*Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished), the Court is not persuaded that merely identifying unskilled jobs which could be commensurate with marginal and limited educations,[15] neutralizes or supplants the reasoning level conflict. *See McHerrin v. Astrue*, 2010 WL 3516433, at *6, 156 Soc. Sec. Rep. Serv. 598 (E.D. Pa., Aug. 31, 2010) (explaining that a number of courts have found the DOT's reasoning levels are much more indicative of whether a claimant is capable of performing more than simple, repetitive tasks) (internal citations omitted)); *see also Chapo v. Astrue*, 682 F.3d 1285, 1290, at n. 3 (10th Cir. 2012) ("[w]hile the jobs cited by the VE happen to be unskilled, that just accounted for issues of skill transfer, not impairment of mental functions – which 'are not skills, but, rather, general prerequisites for most work at any skill level'" (quoting *Wayland v. Chater*, 76 F.3d 394 (10th Cir. 1996) (unpublished))); *see also Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (holding that a limitation to unskilled work did not account for several effects of mental impairment); *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997) (explaining that many unskilled jobs require more than the mental capacity to follow simple instructions); *Cooper v. Barnhart*, 2004 WL 2381515, *4 (N.D. Ola. Oct. 15, 2004) (finding that a limitation to simple tasks appears more squarely addressed by a job's reasoning level, than to its SVP level, which focuses on vocational preparedness necessary to perform the job); SSR 85-15, 1985 WL 56867, at *6 ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job."). For these reasons, the Court declines to adopt the Commissioner's position that the GED reasoning levels can be

---

[15] *See* 20 C.F.R. §§ 404.1564(b)(2) and (3) and 416.964(b)(2) and (3) (explaining that a marginal education, formal schooling at a 6th grade level or less, means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs; and a limited education, formal schooling at a 7th grade through 11th grade level, means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs).

disregarded when addressing the mental demands of jobs listed in the DOT and that identifying unskilled jobs eliminates any conflicts and accommodates a claimant's limitation to do simple work.

The Court is also not persuaded that Ms. Perea's past relevant work demonstrates her ability to do jobs that require level three reasoning, as the Commissioner argues. The ALJ specifically questioned the VE, based on his hypothetical RFC, whether Ms. Perea could perform her past relevant work, to which the VE responded "No." (Tr. 65.) The VE explained that Ms. Perea's past relevant work exceeded the skill level presented in the hypothetical RFC. (Tr. 65.) The Commissioner's argument, therefore, necessarily fails.

The ALJ's failure to resolve the conflict between the VE's testimony and the DOT regarding Ms. Perea's limitation to simple instructions and simple work-related decisions and the reasoning three level jobs the VE identified is reversible error. *Haddock*, 196 F.3d at 1091; *Hackett*, 395 F.3d at 1176. The Court remands on this basis.

### IV. Conclusion

For the reasons stated above, Ms. Perea's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum (Doc. 21) is **GRANTED.**

*[signature: Kirtan Khalsa]*

**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**